This is an appeal from an order made by the surrogate of Hudson County dated March 19th, 1947, denying the application of the appellant to amend or correct a decree in this cause dated March 20th, 1946.
The appeal was taken under the provisions of R.S. 2:31-92
allowing appeals to this court from surrogate's orders.
The facts are not disputed. The question involved is whether the decree issued by the surrogate on March 20th, 1946, grants the relief which the parties sought under the statutes. I do not believe it does. *Page 250 
The appellant, Elizabeth Egge, lived with her husband, William A. Egge, until November 10th, 1924, at the premises then known as 675 Hamilton Avenue (now 827 76th Street), in the Township of North Bergen, Hudson County, in a dwelling owned by her. Her husband William disappeared at the time aforesaid and has not been heard from or located since.
On February 6th, 1946, she petitioned the surrogate in accordance with the provisions of R.S. 3:42-12 et seq., praying that her husband be declared dead. The matter was legally advertised and a hearing before the surrogate was held on March 18th, 1946. The surrogate concluded that the application for relief should be granted, and on March 20th, 1946, he issued a decree reciting that the jurisdictional facts had been complied with, and ended it as follows:
"It is on this 20 day of March, A.D. 1946, ORDERED, ADJUDGED AND DECREED that the said William A. Egge is presumed to be dead."
Mrs. Egge subsequently contracted to sell her house free and clear of the curtesy right of her husband as permitted by R.S.3:42-5. The purchaser of the premises objected to the form of the decree stating that it did not "declare" William A. Egge to be dead, but that he is "presumed" to be dead; and in the circumstances, the title to the premises may be burdened with the husband's right of curtesy.
The appellant now seeks an order directing the surrogate to correct and reform his decree to comply with the statute. The surrogate, however, contends there is nothing wrong with the decree, that the wording is proper, and that it conforms to the statute.
No question is raised as to Mrs. Egge's right to have the required relief afforded by the statute. The question involved in this proceeding is whether the word "declare" should be substituted for the word "presumed" in the decree. The surrogate evidently felt the petitioner was entitled to the statutory relief, however, he erred in his method of expressing it.10 A.L.R. 526.
The provisions of the statute applying are as follows: *Page 251 
"R.S. 3:42-12. When the last known residence, of a person presumed dead pursuant to this chapter, was within this state, the ordinary or surrogate of the county where he last resided shall, upon the written application of his spouse, any next of kin, creditor, executor, administrator or beneficiary under an insurance policy on his life, make an order to show cause before him, at a time and place specified therein, not less than thirty days nor more than three months from the date of the order, why a decree should not be entered declaring such person to be dead, or, if there is personal property belonging to him, why letters of administration should not be granted to the next of kin making application or some other person, which order shall be published in the manner directed by the ordinary or surrogate who shall grant the order.
"R.S. 3:42-13. If at the time and place designated in the order to show cause mentioned in section 3:42-12 of this title, or to which the same may be adjourned, it is proved that the person concerned has remained beyond the sea or absented himself from or concealed himself in this state for the entire period of seven years last past, and has not been heard from or of during that time, and no sufficient cause is shown to the contrary, the ordinary or surrogate may make a decree declaring such person to be dead and may grant letters of administration of his personal property to the next of kin applying therefor, or to some other fit and proper person, who shall give bond to the ordinary in the manner required upon the grant of letters of administration in other cases.
"R.S. 3:42-14. When a person has been declared to be dead under authority of sections 3:42-12 and 3:42-13 of this title and such person would, if living be entitled to an inchoate or consummate right or estate of dower or curtesy in real estate, any person owning an interest in such real estate may assign, convey, sell, mortgage and lease or devise such interest, estate or right as he may have therein, free and clear of the right or estate of dower or curtesy, and a deed, release, receipt, assignment, discharge or covenant made for such purpose shall, when duly executed and acknowledged in the manner provided by law for the record of deeds of real estate, release and bar all right or estate of dower or curtesy therein of the person so declared to be dead."
The statutes direct the surrogate "to make a decree declaring such person to be dead." That declaration is clearly expressed inR.S. 3:42-12; R.S. 3:42-13 and R.S. 3:42-14.
The surrogate used an obsolete form based on sections 30 and 31 of the Orphans Court Act of 1898, 3 Comp. Stat. pp. 3823 and3824. These sections fail to mention a declaration of death, and provide for the issuance of letters of administration. Section 31 uses the language "the said non-resident shall be presumed to be dead." Section 30 is cited by the *Page 252 
revisers of 1937 as one of the sources for R.S. 3:42-12 andR.S. 3:42-13.
The language of these sections, however, in so far as references made to the declaration of death are concerned, has its source in chapter 255 of the laws of 1911, a supplement to the original act of March 7th, 1797. Charles Kocher, in his book,1 Kocher's New Jersey Probate Law (at p. 280), makes this point clear. Commenting upon this supplement, he says:
"It will be observed that this amendment authorizes the surrogate to `make a decree declaring the said person to be dead,' and also authorizes him to grant letters of administration. The original act merely authorized the surrogate to grant administration in such a case. It is quite clear, therefore, that under this act, a person may, in a proper case, be declared dead, when such action be desirable for any purpose, even though there be no goods and chattels upon which administration may be granted."
The original act creating the presumption of death was adopted on March 7th, 1797, and is maintained in its original form in theRevised Statutes of 1877 (at p. 294). This act was amended in 1883. As subsequently amended in 1895, it is preserved in theCompiled Statutes, 2 Comp. Stat. 1904. This legislation makes no provisions for the declaration of death by the surrogate. However, in 1911, the act was amended by chapter 255 of the laws of 1911 providing for such declaration of death.
Section 1 of this act was later amended by chapter 37 of the laws of 1926 by adding to line ten of said section the words "husband, wife." In 1927, chapter 275 amends the original act of 1797 by substantially re-enacting section 1 of the supplement of 1911, and as amended by chapter 37 of the laws of 1926, by providing for an application made "by any next of kin, creditor, executor, administrator, or any beneficiary or beneficiaries under a policy of life insurance."
These two enactments were combined into one by the revisers of 1937 constituting R.S. 3:42-12. The language there is "upon the written application of his spouse, any next of kin, creditor, executor, administrator, or beneficiary under an insurance policy on his life." *Page 253 
Chapter 24 of the laws of 1926, now R.S. 3:42-5 provides for sale free and clear of dower or curtesy. Chapter 37 of the laws of 1926, which amended section 1 of the original act of March 7th, 1797, did not legislate in respect to section 2 of the supplement of 1911.
The legislators presumably believed that the subject-matter of section 2 of the act of 1911 was substantially covered by chapter 24, repealed section 2 of the act of 1911 by chapter 77 of the laws of 1926.
The following year by section 2 of chapter 275 of the laws of 1927, section 2 of the act of 1911 was substantially reenacted. It is now R.S. 3:42-14.
The effect of the duplication is that we have two statutes instead of one indicating that property may be sold free of dower or curtesy upon the surrogate declaring the person dead. In any event, as above stated, the present statutes plainly direct that the surrogate "declare" the person dead.
The original Orphans Court Acts make no mention of rights or interests in real estate. The amendments of 1926 and 1927 were the first to specifically refer to curtesy or dower rights.
I agree with counsel for the appellant that a "decree which simply states that the absent spouse is presumed to be dead" adds nothing to the rights of the petitioning spouse. Such presumption already exists by virtue of the first section of the Death Act,R.S. 3:42-1, which reads as follows:
"If a resident or non-resident of this state remains beyond the sea, absents himself from this state or from the place of his last known residence, or conceals himself in this state or in the place of his last known residence, for seven years successively, he shall, whenever his death comes into question, be presumed to be dead, unless it is proved he was alive within that time."
In Meyer v. Madreperla, 68 N.J. Law 258; 53 Atl. Rep. 477,
the court, among other things, said:
"As the stipulation of the parties established the fact that Patrick had absented himself from the state and from his last-known place of residence in the month of September, 1879, and had not been since heard from, the presumption of the *Page 254 
statute arose, and no rebutting evidence having been produced, such presumption was conclusive proof of Patrick's death in 1886, on some day of the month of September, not later than the last day of that month."
In order to take advantage, however, of the statutes permitting a sale free and clear of dower or curtesy, they plainly contemplate a declaration of death by the surrogate. In Ott v.Braddock, 119 N.J. Law 507; 197 Atl. Rep. 271, the court said:
"Where, as here, an act is plain and unambiguous in its terms, the rule is fundamental that there is no room for judicial construction, since the language is presumed to evince the legislative intent. Rudderow v. West Jersey Ferry Co.,31 N.J.L. 512, 515; Douglas v. Freeholders, c., 38 Id. 214;State v. Brewster, 42 Id. 125; Heston v. Atlantic City, 93Id. 317; In re City of Passaic, 94 Id. 384, 386."
Chief-Justice Beasley said in Douglass v. Chosen Freeholdersof Essex Co., 38 N.J. Law 214, 216, that:
"Where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity of the result, is out of place. It is no province of the courts to supervise legislation, and keep it within the bounds of propriety and common sense, so that even if in this case it could be demonstrated that the regulation in question was incommodious, or even hurtful, an appeal for relief to the judicial power would be utterly in vain."
The proctor for the surrogate expressed doubt as to the power of the surrogate to go beyond a mere statement of a "presumption" of death. This is not for the surrogate to decide. The statute plainly authorizes him to declare the absentee dead. The surrogate's refusal to amend the decree is reversed, and he is directed to amend such decree by substituting the word "declared" for the word "presumed" in the last line of said decree. *Page 255